## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **CAROL S. SHULTHEIS, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | No. 04-71861 |
| | ) | Hon. Bernard A. Friedman, |
| **PALL CORPORATION AND** | ) | Judge, presiding |
| **GELMAN SCIENCES, INC.** | ) | |
| **(d/b/a Pall Life Sciences),** | ) | Magistrate Judge Capel |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING

TO:   COUNSEL OF RECORD

PLEASE TAKE NOTICE that Defendants' Third Motion for Summary Judgment will be brought on for hearing before the Honorable Bernard A. Friedman, in his Courtroom, at a date and time to be set by the Court, or as soon thereafter as counsel may be heard.

Respectfully submitted,

By_____/s/ Karyn A. Thwaites_____
One of its Attorneys

Counsel for Pall Corporation and
Gelman Sciences, Inc., d/b/a Pall Life Sciences

Steven P. Handler
Craig H. Zimmerman
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606
312-372-2000

Michael L. Caldwell
Karyn A. Thwaites
ZAUSMER, KAUFMAN, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, Michigan 48334-2374
248-851-4111

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **CAROL S. SHULTHEIS, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | No. 04-71861 |
| | ) | Hon. Bernard A. Friedman, |
| **PALL CORPORATION AND** | ) | Judge, presiding |
| **GELMAN SCIENCES, INC.** | ) | |
| **(d/b/a Pall Life Sciences),** | ) | Magistrate Judge Capel |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' THIRD MOTION FOR SUMMARY JUDGMENT

Defendants' Pall Corporation ("Pall") and Gelman Sciences, Inc., d/b/a Pall Life Sciences ("Gelman"), by their counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully move this Court for an order granting them summary judgment on each and all of the claims asserted in the plaintiffs' Second Amended Class Action Complaint ("Complaint"), or, in the alternative, for summary judgment on Counts I, II, and III of the Complaint and dismissal, pursuant to 28 U.S.C. § 1367(c), of the remaining claims set forth in the Complaint. In support of this Motion, Pall and Gelman submit the accompanying Memorandum in Support, together with the evidentiary exhibits thereto.

Pall and Gelman further state that, pursuant to Local Rule 7.1, counsel for defendants conferred with counsel for the plaintiffs, by telephone conference, on Monday, October 17, 2005. Counsel for Pall and Gelman explained the nature of this Motion and its basis, and sought plaintiffs' counsel's concurrence in it.  Plaintiffs' counsel would not concur in the Motion.

For the reasons set forth in the accompanying Memorandum, defendants Pall Corporation and Gelman Sciences, Inc., respectfully pray this Court enter judgment in their favor, and against plaintiff, and award such different or further relief as it deems appropriate and just.

Respectfully submitted,

By     /s/ Karyn A. Thwaites     
            One of its Attorneys

Counsel for Pall Corporation and
Gelman Sciences, Inc., d/b/a Pall Life Sciences

Steven P. Handler
Craig H. Zimmerman
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606
312-372-2000

Michael L. Caldwell
Karyn A. Thwaites
ZAUSMER, KAUFMAN, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, Michigan 48334-2374
248-851-4111

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CAROL S. SHULTHEIS, et al.      )
                                           )
            Plaintiffs,      )
                                           )
    v.               )  No. 04-71861
                                         )  Hon. Bernard A. Friedman,
PALL CORPORATION AND      )  Judge, presiding
GELMAN SCIENCES, INC.      )
(d/b/a Pall Life Sciences),      )  Magistrate Judge Capel
                                           )
            Defendants.     )

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' THIRD MOTION FOR SUMMARY JUDGMENT

### Issues Presented

1.    Are defendants entitled to summary judgment as to plaintiffs' CERCLA cost recovery claim (Count I), where there is no genuine issue of material fact that these plaintiffs have not incurred "necessary costs of response," as required by CERCLA?

2.    Are defendants entitled to summary judgment as to plaintiffs' RCRA citizen suit claims (Counts II and III), where there is no genuine issue of material fact both that the State of Michigan long ago commenced and is diligently pursuing litigation against defendant Gelman Sciences, Inc., so as to bar these claims under 42 U.S.C. §6972, and that plaintiffs cannot establish essential elements of each of the RCRA claims asserted in Counts II and III?

3.    If the Court retains jurisdiction over Counts IV-VII, are defendants entitled to summary judgment on these common law claims as to Plaintiffs Shultheis and Nelson, where there is no genuine issue that these plaintiffs' properties are not actually contaminated or threatened by contamination allegedly released by defendant Gelman Sciences, Inc.?

4.    If the Court retains jurisdiction over Counts IV-VII, are defendants entitled to summary judgment as to the remaining plaintiffs, where there is no genuine issue that each of these plaintiffs knew about the alleged release of contamination and its potential relationship to his or her own property years before the applicable statute of limitations bar date?

## Controlling and Applicable Authority

1. As to the standard for granting summary judgment on this record, the controlling and most appropriate authority is:

   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Adickes v. S. H. Kress & Co.,* 398 U.S. 144 (1970); *Vollrath v. Georgia-Pacific Corp.,* 899 F.2d 533 (6th Cir. 1990); *Central Quality Servs. Corp. v. Insurance Co. of NA,* 1989 U.S. Dist. LEXIS 17368 (E.D. Mich. Sept. 6, 1989).

2. As to Count I and plaintiffs' inability to demonstrate an essential element of their CERCLA claim, namely the "necessity" of alleged response costs, the controlling and most appropriate authority is:

   *Village of Milford v. K-H Holding Corp.*, 390 F.3d 926 (6th Cir. 2004); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461 (6th Cir. 2004); *Franklin County Convention Facilities Auth. v. American Premier Underwriters, Inc.* 240 F.3d 534 (6th Cir. 2001); *Kalamazoo River Study Group v. Rockwell Int'l Corp.,* 274 F.3d 1043 (6th Cir. 2001); *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.,* 228 F.3d 275 (3rd Cir. 2000); *Johnson v. James Langley Operating Co.,* 226 F.3d 957 (8th Cir. 2000).

3. As to Counts II and III and the fact that these claims are barred by RCRA where, as here, the State has commenced and is diligently prosecuting a civil action, the controlling and most appropriate authority is:

   *Dedham Water Co. v. Cumberland Farms Diary, Inc.*, 89 F.2d 1146, 1157 (1st Cir. 1989); *Hudson Riverkeeper Fund, Inc. v. Harbor Hastings Assocs.*, 917 F. Supp. 251, 256 (S.D.N.Y. 1996); *City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F. Supp. 971, 981-82 (S.D. Ohio 1993); *McGregor v. Industrial Excess Landfill, Inc.*, 709 F. Supp. 1401, 1407 (N.D. Ohio 1987).

   As to Count II and plaintiffs' inability to identify a present violation of any pertinent environmental requirement, an essential element of their claim, the applicable and controlling authority is:

   42 U.S.C. § 6972(a)(1)(A).

   As to Count III and plaintiffs' inability to demonstrate any imminent and substantial endangerment, an essential element of their claim, the controlling and most appropriate authority is:

   *Davis v. Sun Oil Co.*, 148 F.3d 606 (6th Cir. 1998); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248 (3rd Cir. 2005); *Parker v. Scrap Metal Processors, Inc.*,  386 F.3d 993 (11th Cir. 2004); *Price v. United States Navy,* 39 F.3d 1011 (9th Cir. 1994);  *Foster v. United States*, 922 F. Supp. 642 (D.D.C. 1996).

4.  As to Counts IV through VII and the Court's discretion to dismiss the state law claims, the controlling and most appropriate authority is:

*Musson Theatrical v. Federal Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996).

5.  As to Counts IV through VII and Plaintiffs Shultheis' and Nelson's inability to demonstrate an essential element of their common law claims under Michigan law, namely an actual or imminently threatened injury, the controlling and most appropriate authority is:

*Adkins v. Thomas Solvent Co.,* 440 Mich. 293, 487 N.W.2d 715 (1992); *Brisboy v. Fibreboard Corp.,* 429 Mich. 540, 418 N.W.2d 650 (1988); *Smith v. Western Wayne County Conservation Assn.,* 380 Mich. 526, 158 N.W.2d 463 (1968); *City of Jackson v. Thompson-McCully Co.,* 239 Mich. App. 482, 608 N.W.2d 531 (2000); *Olden v. LaFarge Corp.* 203 F.R.D. 254 (E.D. Mich. 2001); *Berardo v. Emro Marketing Co.,* 1998 U.S. Dist. LEXIS 4179 (E.D. Mich. Feb. 19, 1998).

6.  As to Counts IV through VII and the statute of limitations bar to the remaining plaintiffs' state law claims, the controlling and most appropriate authority is:

MCL § 600.5805(10); *Moll v. Abbott Labs.,* 444 Mich. 1 (1993); *Village of Milford v. K-H Holding Corp.,* 390 F.3d 926 (6th Cir. 2004); *Horvath v. Delida*, 213 Mich. 620 (1995); *Garg v. Macomb County Community Mental Health Services*, 472 Mich. 263 (2005).

I.      **Introduction**

Carol Shultheis started this action 17 months ago, asserting environmental claims based upon the alleged historic release of 1,4-dioxane into groundwater at Gelman Sciences, Inc.'s facility in Scio Township, Michigan.  Defendants moved for summary judgment over a year ago, because the undisputed material facts demonstrate Ms. Shultheis has no cognizable claim. Plaintiff avoided a ruling on that motion's merits, promising an amended complaint that would "resolve" these issues.  The First Amended Complaint filed last November only exacerbated the problems:  The undisputed material facts known last year demonstrated that none of the additional seven plaintiffs could have cognizable federal or state claims.  Defendants again moved for summary judgment.  Again, plaintiffs avoided a decision on the merits of defendants' motion, asserting that discovery would somehow reveal that plaintiffs have viable claims.

Discovery on these issues closed September 15, 2005.  The undisputed material facts have not changed.  Instead, discovery simply has confirmed that these plaintiffs have no cognizable CERCLA, RCRA, or state law claims.  Consequently, summary judgment should now issue.

In Count I, each plaintiff must prove that he or she has incurred "necessary costs of response" to recover under CERCLA.  Gelman Sciences, Inc. ("Gelman") has conducted and continues to conduct all "necessary" CERCLA response activities.  None of these plaintiffs has incurred "necessary" response costs.  Consequently, defendants are entitled to summary judgment on Count I.

Plaintiffs also assert claims under RCRA's citizen suit provision, 42 U.S.C. § 6972(a)(1), in Counts II and III.  RCRA itself bars these claims as a matter of law, because the Michigan Department of Environmental Quality ("MDEQ") is diligently pursuing comparable claims in state court.  Count II also fails because plaintiffs cannot identify any current violations of

applicable environmental requirements, as required by 42 U.S.C. §6972(a)(1)(A).  Similarly,

Count III fails because none of these plaintiffs can demonstrate an essential element of a 42

U.S.C. § 6972(a)(1)(B) citizen suit claim, *i.e.,* not one can demonstrate an "imminent or

substantial endangerment" to his or her property.  Defendants, therefore, are also entitled to

summary judgment on Counts II and III.

Once the Court grants summary judgment as to Counts I-III, the Court may exercise its

discretion to dismiss the remaining state law claims.  However, if this Court retains jurisdiction

over plaintiffs' state law claims (Counts IV through VII), defendants are entitled to summary

judgment as to these claims as well.  Plaintiffs Shultheis and Nelson have no cognizable claim

because their properties are neither contaminated nor threatened by contamination.  The

remaining plaintiffs – Ms. Hillebrand, Mr. Smith, the Kennedys, and the Zummers – have known

about the alleged releases from Gelman's facility and their potential relation to their properties

for years.  Gelman, itself, began sampling for contamination on each of these plaintiffs'

properties with each of these plaintiffs' permission by no later than <u>1999</u>, over five years before

these plaintiffs joined this action in November 2004.  Consequently, these six plaintiffs' state law

claims are barred by Michigan's three-year statute of limitations.

## I.    Summary of Undisputed Material Facts

From 1964 through the present, Gelman has owned and operated a facility at 600 Wagner

Road in Scio Township (the "Gelman facility").  (Second Amended Class Action Complaint

("Am. Cmp."), ¶ 18).  Gelman manufactured medical filter products at the facility.  (*Id.*, ¶ 19).

Historically, Gelman used 1,4-dioxane in its manufacturing process.  (*Id., ¶ 19)*.  1,4-dioxane is a

"hazardous substance," as defined by CERCLA.  (*Id.* ¶ 47).  Plaintiffs allege that, until 1985,

Gelman disposed of wastewater containing 1,4-dioxane in on-site wastewater treatment lagoons

and by spraying the wastewater on to "grassy fields" on the Gelman facility.  (*Id.*, ¶ 19).  As a result, plaintiffs assert that 1,4-dioxane was released and migrated off-site in groundwater.  (*Id.*, ¶ 21).

Pall Corporation acquired Gelman in 1997.  (*Id.*, ¶ 9).  Since that time, Gelman has been a wholly-owned subsidiary of Pall Corporation. (*Id.*)

Gelman has extensively investigated and addressed 1,4-dioxane groundwater contamination since the mid-1980's.  (Exh. 1, Brode Affidavit, ¶ 4).  Over the past 18 years, Gelman has obtained and analyzed thousands of groundwater and soil samples.  (*Id.*, ¶ 5).  In 1988, the State of Michigan filed an environmental enforcement action against Gelman, captioned *Attorney General, ex rel. Michigan Natural Resources Comm'n, et al. v. Gelman Sciences, Inc.*, Case No. 1-88-34734 CE.  The State sought to require Gelman to clean up the discharge of 1,4-dioxane.  In October 1992, Gelman and the State entered into a Consent Judgment, pursuant to which Gelman agreed to undertake response activities with regard to the groundwater contamination.  (Exh. 2).[1]  Gelman has conducted and continues to conduct extensive remedial activities, as detailed more thoroughly in Mr. Brode's attached affidavit.  Some of Gelman's most extensive and innovative remedial activities have been directed at the Evergreen Subdivision, where six of the plaintiffs reside. (Exh. 1, Brode Aff. ¶¶ 12-13).

The undisputed material facts as to each plaintiff are as follows:

### A.      Carol S. Shultheis – 837 Bruce Street, Ann Arbor

Plaintiff Shultheis owns and resides at 837 Bruce Street, Ann Arbor.  (Am. Cmp, ¶ 2).  Ms. Shultheis does not rely on a well to supply water to her home.  (Shultheis Dep. at p. 20,

---

[1] The Circuit Court for the County of Washtenaw, Michigan (Hon. Donald E. Shelton, presiding), holds semi-annual hearings on the status of the remediation and is actively supervising the parties' implementation of the Consent Judgment.  Gelman's current investigation and remediation efforts have been undertaken largely pursuant to that Court's orders and State-approved work plans.  (Exh. 1, Brode Aff. ¶ 3).

attached hereto as Exh. 17).  1,4-dioxane has never been detected on her property.  (*Id.* at p. 21).

Her property is located over 1.5 miles from the Gelman facility.  (Exh. 1, Brode Aff. ¶ 6, and

Attachment 3, scale map showing locations).  Based upon all available data, Mr. Brode attests, to

a reasonable degree of scientific certainty, that:

- there is no scientific data developed by Gelman, the State, the City of Ann Arbor or any other participant in this remediation indicating that Ms. Shultheis' property is actually contaminated; and

- there is no likelihood that Ms. Shultheis' property will ever be contaminated by releases of 1,4-dioxane from the Gelman facility at levels actionable under CERCLA, *i.e.*, at or above concentrations of 85 parts per billion.

(*Id.* ¶ 10).  In short, there is no evidence of existing contamination and no evidence of a

reasonably certain threat of future contamination of Ms. Shultheis' property.  (*Id.*).

### B.    Patricia Nelson – 3500 Elizabeth Road

Plaintiff Nelson owns and resides at 3500 Elizabeth Road.  She purchased this property in

January 2004 (Exh. 3), but has lived at that address for five years.  (Nelson Dep. at p. 6, attached

hereto as Exh. 18).  The well at 3500 Elizabeth Road has been regularly sampled for 1,4-dioxane

since 1995.  1,4-dioxane has never been detected (Exh.  4, Beyer Aff., Attachment 1), and Ms.

Nelson has no evidence that 1,4-dioxane is present on her property.  (Nelson Dep. at p. 15).

Based upon all available data, Mr. Brode attests, to a reasonable degree of scientific certainty,

that:

- there is no scientific data developed by Gelman, the State, the City of Ann Arbor or any other participant in this remediation indicating that Ms. Nelson's property is actually contaminated; and

- there is no likelihood that Ms. Nelson's property will ever be contaminated by releases of 1,4-dioxane from the Gelman facility at levels actionable under CERCLA, *i.e.,* at or above concentrations of 85 parts per billion.

(Exh. 1, Brode Aff., ¶ 10).  As with Plaintiff Shultheis' property, there is no evidence of either existing contamination or a reasonably certain threat of future contamination of Ms. Nelson's property.  (*Id.*).

### C.      Evergreen Subdivision Plaintiffs

The remaining six plaintiffs live in the Evergreen Subdivision of Scio Township.  Each of these plaintiffs knew about the alleged groundwater contamination and its relationship to his or her property before November 2001:

### 1.      Corrine Hillebrand -- 453 Dupont Circle, Scio Township

Plaintiff Hillebrand has been aware of the groundwater contamination issues for over 15 years.  Gelman has regularly sampled the Hillebrands' well for 1,4-dioxane since 1998.  (Exh.  4, Beyer Aff., Attachment 2).  In 1991, the Hillebrands received a reduced tax assessment for this property due to "water contamination."  (Exh. 5).  Sampling first detected low levels of 1,4-dioxane in the Hillebrands' well in February 1998.  Gelman notified the Hillebrands of these results by correspondence dated March 13, 1998.  (Exh. 6; Hillebrand Dep. at p. 16, attached hereto as Exh. 19).  On November 15, 1999, Gelman and the Hillebrands executed a Site Access Agreement.  (Exh. 7).  The Hillebrands were connected to the municipal water supply, at Gelman's expense.  (Hillebrand Dep. at p. 19).

### 2.      Anton Smith -- 465 Dupont Circle

Plaintiff Smith has been aware of groundwater contamination issues in the Evergreen Subdivision for ten years, since he purchased his home in 1995.  (Smith Dep. at p. 14, attached hereto as Exh. 20).  Gelman has sampled Mr. Smith's property for 1,4-dioxane on a regular basis since 1998.  (Exh. 4, Beyer Aff. ¶ 6, Attachment 3).  In February 1998, sampling revealed the presence of 1,4-dioxane.   Gelman notified Mr. Smith of the presence of 1,4-dioxane in his well

by correspondence dated March 13, 1998.  (Exh. 8; Smith Dep. at p. 23).  On July 21, 1998,

Gelman and Mr. Smith executed a Site Access Agreement.  (Exh. 9).  Mr. Smith's property was

also connected to the municipal water system, at Gelman's expense.  (Smith Dep. p. 17-18).

> 3.    Jimmie H. and Joann Kennedy – 460 Rose Drive

Mr. and Mrs. Kennedy have been aware of the Gelman groundwater contamination issues

for 16 years: the Department of Public Health sampled their well for 1,4-dioxane in 1989. (Exh.

10).  In 1991, the Kennedys obtained a reduction in their property tax assessment based upon

"water contamination."  (Exh. 5).  The Kennedys' well has been sampled regularly by the State

since 1995, and by Gelman since 1999.  (Exh. 4, Beyer Aff. ¶ 6, Attachment 4).  In April 1997,

and again in July 2000, 1,4-dioxane was detected at low levels in the well.  (Exh. 4, Beyer Aff.,

Attachment 4; Joann Kennedy Dep. at pp. 21-22, attached hereto as Exh. 21).  The Kennedys

were notified in writing of the results of each water sample taken, including the April 1997 and

July 2000 sample results.  (Exh. 4, Beyer Aff., ¶ 3; Joann Kennedy Dep at pp. 21-22).  Following

her receipt of the July 2000 sample results, Ms. Kennedy discussed the test results with Lois

Graham, of the Michigan Department of Public Health.  (Joann Kennedy Dep. at pp. 22-24).

> 4.    Robert and Patricia Zummer – 3249 Dexter Avenue

Mr. and Mrs. Zummer were aware of the groundwater contamination issues in the

Evergreen Subdivision at the time they purchased their home at 3249 Dexter Avenue in May

1998.  (Patricia Zummer Dep. at pp. 6, 9, attached hereto as Exh. 22).  Before then, the Zummers

lived two houses away, at 3213 Dexter Avenue, and learned of the contamination in the

Evergreen Subdivision while residing at that address.  (*Id.* at pp. 9-11).  Washtenaw County has

been sampling the Zummers' well since they moved to their current address in 1998.  (*Id.* at p.

14).  In addition, Gelman has been sampling the Zummers' well since 1999.  (Exh. 4 Beyer Aff.

¶ 6, Attachment 5).  Although regularly sampled, 1,4-dioxane has never been detected in the Zummers' well. (*Id.*; Patricia Zummer Dep. at p. 17).  In addition, the Zummers were aware of their alleged damages – diminution in property value – for well over three years prior to bringing this action.  (Patricia Zummer Dep. at p. 20).

As to all eight plaintiffs, the undisputed material facts are: a) Ms. Shultheis' and Ms. Nelson's properties are neither impacted nor threatened by contamination; b) Ms. Hillebrand has known of the contamination issues since 1990; c) Mr. Smith has known of the contamination issues since 1995; d) Mr. and Mrs. Kennedy have known of the contamination issues since 1989; and e) Mr. and Mrs. Zummer knew of the contamination issues by no later than 1995.

## II.    <u>Standard for Summary Judgment</u>

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once a properly supported summary judgment motion has been filed, the burden shifts to the party opposing the motion to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine dispute as to any material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986) (emphasis in original); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989).  "A material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990).

Black-letter law provides that these plaintiffs' Rule 23 class allegations cannot save their claims from summary judgment. A threshold requirement in any class action is that each representative plaintiff have a viable claim. *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Fallick v. Nationwide Mutual Ins. Co.*,162 F.3d 410, 423 (6th Cir. 1998); *Goldsby v. Ford Motor Co.*, 183 F. Supp. 2d 943, 949 (E.D. Mich. 2001).

In this case, each plaintiff must establish that he or she has a cognizable claim to survive summary judgment. None of these plaintiffs has a viable CERCLA claim. None of these plaintiffs has a cognizable RCRA claim. Plaintiffs Shultheis and Nelson have no cognizable state law claims. The remaining plaintiffs' state law claims are time-barred. Thus, summary judgment should be granted on all claims.

## III.   Argument

### A.   None of These Plaintiffs Has Incurred "Necessary Costs of Response" Under CERCLA: Count I Must Fail.

Plaintiffs' Count I asserts a claim for private cost recovery under CERCLA's Section 107(a), 42 U.S.C. § 9607(a). To establish a prima facie case for private cost recovery under Section 107(a), a plaintiff must prove: (1) the site is a 'facility'; (2) a release or threatened release of a hazardous substance has occurred; (3) the release has caused the plaintiff to incur necessary costs of response consistent with the National Contingency Plan; and (4) the defendant falls within one of the four categories of potentially responsible parties. *Village of Milford v. K-H Holding Corp.,* 390 F.3d 926, 933 (6th Cir. 2004); *Franklin Cty. Conv. Fac. Auth. v. American Prem. Under., Inc.,* 240 F.3d 534, 541 (6th Cir. 2001).

A private plaintiff must demonstrate that his or her "costs of response" were "necessary." 42 U.S.C. § 9607(a)(4)(B). "Costs of response" are costs incurred in connection with responding to, removing or remediating the release of CERCLA "hazardous substances." 42 U.S.C. §§ 9601

(23)-(25) & 9607(a).  To be "necessary," costs of response must be reasonable, "environmentally sound," and contribute in some manner to "directly addressing the release of contaminants" at issue.  *Village of Milford*, 390 F.3d at 933-34.  A response cost is necessary if it is "necessary to the containment and cleanup of hazardous releases."  *United States v. Hardage*, 982 F. 2d 1436, 1448 (10th Cir. 1992).

Applying these standards, plaintiffs' costs have not been and cannot be "necessary," as required by CERCLA.  It is undisputed that none of the plaintiffs has incurred any costs to investigate or cleanup the releases.  Plaintiffs Shultheis and Nelson own properties that have not even been impacted and are not threatened by 1,4-dioxane contamination.  Consequently, none of their costs could be "necessary."  *See Johnson v. James Langley Oper. Co.,* 226 F.3d 957, 964 (8th Cir. 2000).

As to the Evergreen plaintiffs, Gelman, not the plaintiffs, has regularly tested and monitored for 1,4-dioxane throughout the Evergreen Subdivision for many years, including on each of these plaintiffs' properties.  The MDEQ and the Michigan state court with jurisdiction over the State's ongoing enforcement action have supervised Gelman's implementation of a comprehensive effort to identify the presence and migration of 1,4-dioxane in groundwater and, to design and implement the necessary remediation steps to address that contamination.  To the extent remedial steps have been "necessary," they have been undertaken by Gelman.  On this record, no other private party – and certainly none of the  plaintiffs -- could demonstrate they had incurred "necessary" costs of response, because all necessary costs have been and are being incurred by Gelman.

Plaintiffs' counsel has allegedly retained an environmental consultant (Am. Cmp., ¶¶ 25 & 51), whose fees and costs are claimed to be "necessary" costs of response.  However, that

consultant's work, if any, has been done in anticipation of litigation.  Indeed, plaintiffs refused to produce information concerning the consultant and his or her work, on the grounds that such information was protected as "attorney work product." (Exh. 11, at Response to Interrogatory No. 3, Responses to Requests for Production Nos. 12-18).[2]  Moreover, not one of the plaintiffs in this action has personally retained an environmental consultant, and no plaintiff knows whether his or her counsel has retained one.  (Shultheis Dep. at pp. 27-28; Nelson Dep. at p. 21; Hillebrand Dep. at pp. 32-33; Smith Dep. at pp. 39-40; Jimmie Kennedy Dep. at p. 27, attached hereto as Exh. 23; Joann Kennedy Dep. at p. 48; Patricia Zummer Dep. at p. 23; Robert Zummer Dep. at p. 18, attached hereto as Exh. 24).

"Generally speaking, legal fees and litigation-related costs 'are not recoverable' [under CERCLA]; only 'work that is closely tied to the actual cleanup… may constitute a necessary cost of response.'"  *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 482 (6th Cir. 2004), *quoting Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 549 (6th Cir. 2001).  Costs of retaining an environmental consultant in anticipation of litigation are not "necessary" costs under CERCLA.  *See, e.g., Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 294 (3d Cir. 2000); *Redland Soccer Club, Inc. v. Dep't of the Army*, 55 F.3d 827, 850 (3d Cir. 1995) (affirming district court's ruling that costs not "necessary" where undertaken for litigation purposes).  In *Black Horse Lane Assoc., L.P.*, the Third Circuit affirmed the trial court's grant of summary judgment on plaintiffs' CERCLA claim.  *Black Horse Lane Assoc., L.P.*, 228 F.3d at 278.  The *Black Horse Lane Assoc.* court held

---

[2] Similarly, plaintiffs refused to identify response costs they had allegedly incurred, claiming that defendants' straight-forward discovery request called for "a legal conclusion." (Exh. 11, at Response to Interrogatory No. 1, Responses to Requests for Production No. 3)

that the nature (consultant charges) and timing (proximate to the litigation), of the claimed costs

inevitably meant the costs could not be CERCLA response costs. *Id.* at 294-95.

> At best, it appears that ESI served as appellants' environmental advisor in relation to the Property, and that appellants simply monitored, for their own benefit, Essex's progress in its cleanup efforts. Given that neither ESI nor appellants were involved in any capacity in the actual environmental cleanup of the Property, it is clear that the fees appellants paid in connection with ESI's consulting work did not relate to any remedial or response action at the Property. As in *Redland*, <u>the funds for which appellants seek reimbursement were not "necessary to the containment and clean up of hazardous releases, . . ." [citation omitted], inasmuch as appellants simply had no involvement in any remedial or removal actions at the Property.</u>

*Id.* at 297. (Emphasis added.)

As in *Black Horse Lane Assoc.*, these plaintiffs allegedly incurred response costs for their

"environmental consultant." As in *Black Horse Lane Assoc.*, plaintiffs' environmental

consultant has played no role in the actual work – conducted by Gelman – to investigate and

remediate releases from the Gelman facility. Thus, as in *Black Horse Lane Assoc.*, plaintiffs'

costs have not been "necessary." Summary judgment on Count I, therefore, should issue.

Even if plaintiffs' alleged environmental consultant had actually performed some kind of

unsanctioned environmental investigation, such costs could not be considered "necessary" given

the comprehensive nature of Gelman's response. The Sixth Circuit's decision in *Village of

Milford v. K-H Holding Corp.*, decided last year, describes the narrow circumstances in which

the costs of independent response activity can be considered "necessary." The contrast between

the undisputed facts here and the facts of *Village of Milford* demonstrates why summary

judgment is necessary.

In *Village of Milford*, the municipal water district detected two chlorinated solvents in

1989 and again in 1994. At that time, K-H Corporation, which operated a facility near the

district's wells, discovered that it had released a variety of chlorinated solvents to the groundwater. K-H conducted its own investigation and remediation, but denied responsibility for the contamination in the district's wells. Ultimately, MDEQ identified K-H as a potentially responsible party for the contamination in the district's wells and K-H implemented remedial measures to block the migration of contaminates towards the district's wells. *Village of Milford,* 390 F.3d at 930-31.

The water district sued K-H under CERCLA to recover its environmental investigation costs. After a bench trial, this Court denied the district's claim, concluding, in part, that the district's costs were not "necessary" because K-H was investigating the contamination on its own property and off-site, and because the district's well water never exceeded federal drinking water standards.[3] On appeal, the Sixth Circuit reversed and remanded. *Village of Milford*, 390 F.3d at 930. Recognizing that the bulk of the district's costs had been incurred to study its own water supply at the direction of the MDNR during a time when K-H both denied responsibility and did not provide comparable studies, the Sixth Circuit concluded that at least some of the district's activities might be considered "necessary." *Id.* at 933-34.

The undisputed facts of this case are a stark contrast. Unlike the plaintiff in the *Village of Milford*, several of the plaintiffs either have no contamination in their wells (Ms. Nelson, Mr. and Mrs. Zummer) or never had a well in the first place (Ms. Shultheis). Unlike the *Village of Milford*, the responsible party has conducted all necessary response activities pursuant to work plans approved by the MDEQ, and as supervised by the state court. Unlike the plaintiff in the *Village of Milford*, all of the potentially impacted plaintiffs have had their wells sampled and

---

[3] This Court's findings of fact and conclusions of law are set forth in *Village of Milford v. K-H Holding Corp.*, Civil Action No. 99-70950, Dkt. No. 130.

analyzed routinely for years – by Gelman.  To the extent remedial steps have been "necessary," they have been undertaken -- by Gelman.

### B.   Plaintiffs Cannot Establish Essential Elements of Counts II and III, And Both Claims Are Barred By The State's State Court Action.

Plaintiffs ask this Court to order defendants to take any actions necessary to abate the groundwater contamination pursuant to both 42 U.S.C. § 6972(a)(1)(A) and (B).  Section 6972(a)(1)(A) authorizes a private citizen, on proper notice, to bring suit against any person "alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition or order which has become effective pursuant to this chapter . . . ."  42 U.S.C. § 6972(a)(1)(A).[4]  Thus, an essential element of a Section 6972(a)(1)(A) action is a current violation of an applicable RCRA requirement.  Section 6972(a)(1)(B) authorizes a private citizen, on proper notice, to bring suit against any person to address an alleged "imminent and substantial endangerment" to health or the environment.  42 U.S.C. § 6972(a)(1)(B).  An "imminent and substantial endangerment" is an essential element under this provision.  42 U.S.C. § 6972(a)(1)(B).

Even assuming plaintiffs could establish the essential elements of their RCRA citizen suit claims, these claims should be summarily dismissed, because the State of Michigan has commenced and is diligently prosecuting a civil action seeking to remedy conditions identical to those alleged by plaintiffs.  RCRA Sections 6972(b)(1)(B) and (b)(2)(C), respectively, bar the

---

[4] Additionally, as was fully briefed in Defendants' Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint, plaintiffs did not provide proper pre-suit notice as is required by 42 U.S.C. § 6972(b).  Seven of the eight plaintiffs failed to give any notice.  Ms. Shultheis, the only plaintiff who actually sent any sort of notice, provided a notice that did not identify the applicable legal requirements that she claimed were being violated and failed to contain additional information required by 40 C.F.R. Part 254, RCRA's implementing regulation for such notices.  Because plaintiffs failed to provide adequate pre-suit notice, this Court does not have subject matter jurisdiction over plaintiffs' RCRA claims.

commencement of citizen suits – such as Counts II and III -- when there is a pre-existing State enforcement action addressing the same subject matter.

       1.      <u>Because there is a pre-existing State enforcement action, RCRA Section 6972 bars both Count II and III.</u>

For nearly twenty years, the State of Michigan, as authorized by the United States Environmental Protection Agency ("USEPA"), has enforced the State's RCRA requirements.  In 1986, the USEPA authorized the State of Michigan to implement, administer, and enforce its own solid and hazardous waste program, in lieu of RCRA's federal requirements.  51 Fed. Reg. 36,804 (Oct. 16, 1986).  The effect of such delegation is to substitute state requirements for the more generic federal RCRA requirements and to make the State principally responsible for enforcement of those standards.  67 Fed. Reg. 49,617 (July 31, 2002).

The State of Michigan has been pursuing an enforcement action against Gelman since 1988 in the Circuit Court for the County of Washtenaw.  The State's action was premised upon Michigan's Environmental Response Act (Act 307), which is now Part 201 of the Natural Resources and Environmental Protection Act ("NREPA"), MCL 324.20101-.20142.  The lawsuit sought and seeks to "clean up pollution of local water supplies caused by the discharge of dioxane."  Opinion and Order, No. 88-34734-CE, Dec. 17, 2004, slip op. at 2 (Exh. 12).

Gelman and the State reached a comprehensive resolution and entered into a consent judgment in 1992 under File No. 88-34734-CE (the "Consent Judgment").  In very cursory terms, the extensive Consent Judgment requires Gelman Sciences to:

     **1.**     remove, treat and dispose of contaminated groundwater from the designated aquifer systems pursuant to work plans approved by the MDEQ;

     **2.**     design, install, operate and maintain systems to control, remove, and treat soil contamination at Gelman Sciences' property pursuant to work plans approved by the MDEQ;

     **3.**     comply with applicable laws, regulations, and permits;

14

4.      make available to the MDEQ the results of all sampling, tests, and/or other data in the performance or monitoring of the requirements of the Consent Judgment;

5.      provide the MDEQ with access to any property which is subject to the implementation of the Consent Judgment; and

6.      pay stipulated penalties if Gelman Sciences fails or refuses to comply with the terms or conditions of the Consent Judgment or any approved work plan.

*See* 1992 Consent Judgment, No. 88-34734-CE, Circuit Court for Washtenaw County, Michigan (Exh. 2).  The Washtenaw County Circuit Court has continuing jurisdiction to resolve all disputes regarding implementation of the Consent Judgment. (See Consent Judgment, §§ I and XVI).  The Consent Judgment was amended in 1996 and, again, in 1999. (Exhs. 13 and 14, respectively).  Moreover, as part of its continuing enforcement of the Consent Judgment, the State Court has issued two remediation enforcement orders dated July 17, 2000 (Exh. 15) and December 17, 2004 (Exh. 12), respectively.

Given the record of *Attorney General v. Gelman Sciences, Inc.*, there can be no genuine question that the State of Michigan "has commenced and is diligently prosecuting" a civil action in a Michigan court against Gelman Sciences.  The State's action is based upon Part 201, which is one of the State statutes that the USEPA recognized as providing the State with the authority to ensure that the corrective action goals of RCRA are achieved.  *Memorandum of Understanding Between the United States Environmental Protection Agency and the Michigan Department of Environmental Quality*, § 5, p. 3-5 (Nov. 3, 2000) (Exh. 16).  The State's civil action covers the same environmental matters as plaintiffs' proposed RCRA claims (in a much more comprehensive fashion) and requires Gelman to both extensively investigate and remediate precisely the environmental impacts on which plaintiffs' claims depend.  *See, e.g., Hudson Riverkeeper Fund, Inc. v. Harbor Hastings Associates,* 917 F. Supp. 251, 256 (S.D.N.Y. 1996) (court dismissed claims brought under § 6972(a)(1)(B) where the State court lawsuit commenced

15

and diligently prosecuted by the State of New York—but silent as to whether filed pursuant to § 6972(a)(1)(B)— was "equivalent" of the one brought under RCRA by plaintiffs.)

Both Counts II and III are subject to this same bar. This Court's sister courts in the Sixth Circuit have barred plaintiffs from prosecuting citizen suits under Section 6972(a)(1)(A) where state authorities were diligently prosecuting similar actions in court. For example, in *McGregor v. Industrial Excess Landfill*, *Inc.*, the trial court held that a private citizen suit was barred because the State of Ohio had already secured injunctive relief against defendants relating to waste chemicals leaking from a landfill. *McGregor v. Industrial Excess Landfill*, *Inc.*, 709 F. Supp. 1401, 1407 (N.D. Ohio 1987), *aff'd* on other grounds 856 F.2d 39 (6th Cir. 1988). Plaintiffs' citizen suit alleged violations of standards, regulations, conditions, and requirements of RCRA pursuant to § 6972 (a)(1)(A) and imminent and substantial endangerment to the plaintiffs' health and environment pursuant to § 6972 (a)(1)(B). *Id.* at 1406. The trial court held that the action in Ohio courts, filed by the Ohio Environmental Protection Agency ("OEPA"), precluded the plaintiffs' § 6972 (a)(1)(A) claims because, among other things, the "alleged failure on the defendants behalf to comply with various environmental standards and regulations. . . is the subject of the present OEPA action in state court." *Id.* at 1407.

Similarly, the court in *City of Heath, Ohio v. Ashland Oil, Inc.* barred the plaintiff's Section 6972 (a)(1)(a) claims because the State of Ohio had commenced and was diligently prosecuting a state court lawsuit involving the same issues as those alleged by the plaintiff. *City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F. Supp. 971, 981-82 (S.D. Ohio 1993). The trial court, upon reviewing a consent order entered in the State court lawsuit, noted that defendants were required to submit monthly progress reports to the State, reporting on the percentage of completion of the work required, all raw data, and the results. *Id.* The trial court concluded that

"the prosecution of the state action has resulted in a detailed twenty page consent order setting out the work to be performed by defendants and the standards to which the work must comply, monitored by the state and subject to Court intervention if not complied with." *Id.* at 982.  Thus, Section 6972(b)'s bar against citizen suits which overlap with or duplicate pre-existing State enforcement actions squarely applies and bars these plaintiffs' claims.

     2.     Because there is no current violation of applicable requirements, Count II fails.

An essential element of a Section 6972(a)(1)(A) claim is that plaintiffs establish a current violation of an applicable RCRA requirement.  42 U.S.C. § 6972(a)(1)(A).  To date, plaintiffs have failed to identify any applicable environmental legal requirement that either Pall or Gelman is allegedly violating.  In response to defendants' request that plaintiffs identify all "corrective action standards, requirements and regulations under RCRA" that they contend defendants are violating, plaintiffs failed to provide any meaningful response, but rather objected to the request as calling for a "legal conclusion."  (Exh 11 , Response to Interrogatory No. 7).  Pall and Gelman are certainly not aware of any such violation.  In other words, plaintiffs have not established -- and cannot establish on this record -- this essential element of their claim under 42 U.S.C. § 6972(a)(1)(A).  Consequently, defendants are entitled to summary judgment as to this claim.

     3.     Because there is no "imminent and substantial endangerment" as to these Plaintiffs, Count III fails.

Defendants are entitled to summary judgment of Plaintiffs' Section 6972(a)(1)(B) claim, among other reasons, because plaintiffs cannot prove an "imminent and substantial endangerment" to their health or the environment.[5]

---

[5] Plaintiffs' claim also fails because plaintiffs cannot prove that 1,4-dioxane is hazardous waste as defined by RCRA.  To date, plaintiffs have identified no facts in support of this allegation.  Rather, again plaintiffs objected to defendants' request that they identify the basis for their allegation that 1,4-dioxane is hazardous waste as calling for a "legal conclusion."  (Exh. 11, Response to Interrogatory No. 6).

To succeed on a claim under this section, Plaintiffs must prove that the 1, 4-dioxane "may present an imminent and substantial endangerment to health or the environment." *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1015 (11th Cir. 2004). Accordingly, such a claim "requires more than a mere showing that solid or hazardous wastes are present at the Site." *Foster v. U.S.*, 922 F. Supp. 642, 661 (D.D.C.1996); *Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp. 2d 432 (M.D. Pa. 2000). Rather, "[a]n imminent and substantial endangerment only exists when there is "'reasonable cause for concern that someone or something may be exposed to a risk of harm . . . if remedial action is not taken.'" *Foster,* 922 F. Supp. at 661. Any endangerment "must be substantial or serious, and there must be some necessity for the action." *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994). Accordingly, courts have not found "imminent and substantial endangerment" where hazardous contamination was present on a plaintiff's property but where there was no pathway of exposure. *See, e.g., Price,* 39 F.3d at 1019-20.

Plaintiffs cannot meet their burden of showing an imminent and substantial endangerment to health or the environment, because the plaintiffs either (i) do not rely on a well as a source of drinking water, and, accordingly, are not endangered because they have no pathway of exposure; or (ii) rely on a well as a source of drinking water, but have no evidence that their wells are threatened by contamination. Plaintiffs Shultheis, Smith, Hillebrand, Joann Kennedy, and Jimmie Kennedy do not rely on a well as the source of their drinking water. *See Price,* 39 F.3d at 1019-20 (no imminent and substantial endangerment where pathway of exposure blocked; *Foster*, 922 F. Supp. at 662 (no imminent and substantial endangerment where groundwater under the site not used for drinking water); *Two Rivers*, 96 F. Supp. 2d at 446 ("The

fact that no one is drinking this water eliminates it as a threat to health or the environment."). Consequently, these plaintiffs' Section 6972(a)(1)(B) claims fail.

Plaintiffs Nelson, Robert Zummer and Patricia Zummer do rely on wells as the source of their drinking water.  However, 1,4-dioxane has never been detected in any of these plaintiffs' wells, nor do they have any evidence that their wells are threatened by 1,4-dioxane at all, let alone at a level sufficient to constitute an "endangerment" to their health.  Absent such evidence, these plaintiffs cannot establish "either a current risk of 'substantial or serious' threatened harm, or 'some necessity for action.'"  *See Foster*, 922 F. Supp. at 662.  Accordingly, these plaintiffs' Section 6972(a)(1)(B) claims also fail.

Because none of the plaintiffs can establish an imminent and substantial endangerment to his or her health or the environment, defendants are entitled to summary judgment of Count III of plaintiffs' Second Amended Complaint.

### C.   Because Plaintiffs' Federal Claim Fails, All of Plaintiffs' State Law Claims Should be Dismissed Without Prejudice.

Counts I, II, and III of the Amended Complaint are claims over which this Court has original jurisdiction: plaintiffs can assert only supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over Counts IV through VII.  (Am. Cmp., ¶¶ 14, 15).  When a federal court disposes the claims over which it has original jurisdiction early in a case, it ordinarily will dismiss claims over which it has only supplemental jurisdiction.  "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims…." *Musson Theatrical v. Federal Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996).  To the extent the Court grants this Motion as to Counts I, II, and III, it need not reach the merits of Counts IV through VII.  Instead, it may simply decline to exercise jurisdiction under §1367 and dismiss these claims without prejudice.

19

**D.** **If The Court Retains Jurisdiction Over Counts IV through VII, Summary Judgment Is Warranted For Differing Reasons.**

If this Court chooses to exercise jurisdiction over the plaintiffs' state law claims, dismissal – with prejudice – is the appropriate result. Plaintiffs Shultheis and Nelson cannot demonstrate any actual or reasonably imminent injury, an essential element of all of their state law claims. Each of the remaining plaintiffs knew of his or her potential state law claims before November 2001, the bar date under Michigan's three-year statute of limitations.

1.  Because Ms. Shultheis and Ms. Nelson Have Suffered No Cognizable Injury And Are Not Reasonably, Imminently Threatened With Cognizable Injury, They Have No Claim.

Michigan law requires a plaintiff to demonstrate that she has suffered a present, cognizable injury to pursue a claim for negligence, trespass or "willful and wanton" misconduct. *See Brisboy v. Fibreboard Corp.*, 429 Mich. 540, 418 N.W.2d 650, 653 (1987); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 265 (E.D. Mich. 2001). A cognizable injury in this case could occur *only* if contamination released from Gelman's facility had actually intruded on plaintiff's property. For instance, as this Court held in *Berardo v. Emro Marketing Co.,* 1998 U.S. Dist. Lexis 4179 (E.D. Mich., Feb. 19, 1998), the well-established law of Michigan is that if "the location of the contamination is not on property owned by Plaintiff, she cannot maintain an action for trespass based upon the contamination." *Id.* at *5; *see also Olden v. LaFarge Corp.* 203 F.R.D. 254, 265 (E.D. Mich. 2001); *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 67, 602 N.W.2d 215, 222 (1999); *Roulo v. Automobile Club of Michigan*, 386 Mich. 324, 328, 192 N.W.2d 237, 240 (1971) (elements of negligence cause of action require that "plaintiff suffered damages").

Private nuisance is defined as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 302, 487

N.W.2d 715, 719 (1992).  A claim for nuisance "need not involve a physical or tangible intrusion"; however, a plaintiff must demonstrate "significant interference with the use and enjoyment of land."  *Id.* at 306, 487 N.W.2d at 721.  "An injunction may issue to prevent a threatened or anticipated nuisance which will *necessarily result* from the contemplated act, where the nuisance is a *practically certain or strongly probable result or a natural or inevitable consequence*." *City of Jackson v. Thompson- McCully Co.*, 239 Mich. App. 482, 490, 608 N.W.2d 531, 537 (2000) (emphasis supplied) (internal quotations omitted).  "[E]quity will not enjoin an injury which is merely anticipated nor interfere where an apprehended nuisance is doubtful, contingent, conjectural or problematical.  A bare possibility of nuisance or a mere fear or apprehension that injury will result is not enough." *Falkner v. Brookfield*, 368 Mich. 17, 117 N.W.2d 125, 128 (1962); *Smith v. Western Wayne Cty. Conservation Assn.*, 380 Mich. 526, 543, 158 N.W.2d 463, 472 (1968) ("Mere apprehension is insufficient to grant injunctive relief against a claimed nuisance.").

As the Brode Affidavit demonstrates, there is no data that either Ms. Shultheis' or Ms. Nelson's property has been physically impacted by 1,4-dioxane allegedly released from the Gelman facility.  (Exh. 1, Brode Affidavit, ¶ 7).  The Brode Affidavit also establishes that Ms. Shultheis and Ms. Nelson cannot demonstrate any threat to their properties approaching the certainty required by Michigan law.  (*Id.*, ¶ 10).  Thus, any potential threat is highly speculative, doubtful, and contingent.  Because neither Ms. Shultheis nor Ms. Nelson's property has been impacted or is imminently threatened, none of their state law claims can survive summary judgment.

2.      The Evergreen Subdivision Plaintiffs' State Law Claims Are Time Barred.

Michigan has a three year statute of limitations on claims for injury to property, including claims sounding in negligence, private nuisance, trespass, and wanton and willful misconduct. M.C.L. §600.5805(10).  "[T]he statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action."  *Moll v. Abbott Laboratories*, 444 Mich. 1, 29 (1993); *see also Solowy v. Oakwood Hospital Corp*, 454 Mich. 214, 222 (1997).  Thus, a claim accrues for limitations purposes when a plaintiff discovers "(1) an injury and (2) the causal connection between the injury and a defendant's breach of duty."  *Jackson Cty. Hog Producers v. Consumers Power Co*., 234 Mich. App. 72, 78 (1999); *Village of Milford,* 390 F.3d at 932.

Each of the six Evergreen Subdivision plaintiffs knew of the facts on which his or her claims are based well over three years before the First Amended Complaint was filed in November 2004.  More specifically:

a)      Ms. Hillebrand was on notice by no later than 1990, when her well was first sampled for 1,4-dioxane;

b)      Similarly, the Kennedys also were on notice by 1989, when their well was first sampled;

c)      The Zummers were on notice by no later than 1998, when they purchased their home and their well was first sampled; and

d)      Mr. Smith was on notice by no later than 1995, when he purchased his home and his well was first sampled.

The First Amended Complaint was filed on November 17, 2004.  All six plaintiffs were on actual notice of any alleged injury and of any alleged claims well before November 17, 2001, three years earlier.  Consequently, the statute bars these claims.

The Second Amended Complaint alleges "continuing injury," in an apparent attempt to avoid the limitations bar.  (Am. Cmp., ¶¶ 21, 26, 69, 74, 79).  However, Michigan law does not recognize a "continuing violation" exception to the statute of limitations.  *Garg v. Macomb County Community Mental Health Services*, 472 Mich. 263 (2005).  In *Garg*, the Michigan Supreme Court held that the "continuing violations" doctrine is irreconcilable with the statutory language of MCL § 600.5805.  *Id.* at 281. The court explained, "a person must file a claim . . . within three years of the date his or her cause of action accrues, as required by § 5805(10).  [Footnote omitted].  That is, 'three years' means three years."  *Id.* at 284.  *See also Greenshields v. Charter Township of Plymouth*, No. 261544, 2005 WL 1842769 (Mich. App. Aug. 4, 2005); *Beauchamp v Ford Motor Company*, No. 256175, 2005 WL 1229748 (Mich. App. May 24, 2005).[6]

## IV.    <u>Conclusion</u>

From the start of this case, the undisputed record has demonstrated Ms. Shultheis has no viable claim against defendants. Plaintiff promised this Court an amended complaint that would address these issues.  Instead, plaintiffs filed an amended complaint that perpetuated the same problem – Ms. Shultheis still has no claims – but exponentially expanded that problem by adding seven new and differently postured plaintiffs with comparably defective claims.  Then, plaintiffs argued that discovery would solve these issues for them.  Instead, discovery has confirmed what

---

[6] Even if the continuing-wrongful-acts doctrine were still viable, however, it still would not save plaintiffs' claims. The doctrine provides that "a continuing wrong is established by continual tortious *acts*, not by continual harmful effects from an original, completed act."  *Horvath v. Delida*, 213 Mich. App. 620, 627 (1995) (emphasis in original). Consequently, continuing migration of contaminants through groundwater, without additional acts by defendants, does not constitute a continuing tort.  *Village of Milford,* 390 F.3d at 933.  Plaintiffs' Second Amended Complaint concedes that any tortious act by defendants occurred well outside the limitations period.  Plaintiffs allege that the *acts* leading to contamination – the use and disposal of 1,4-dioxane – occurred no later than 1985, 19 years before this suit was filed.  (Am. Cmp. ¶ 19).  Beyond this, the Second Amended Complaint alleges only continuing *effects*, such as the continued migration of 1,4-dioxane through groundwater.  (Am. Cmp., ¶¶ 21, 23).  On these facts, the "continuing tort" doctrine cannot apply and these claims are time-barred.

defendants have argued since the beginning of this case.  All of these plaintiffs appear to have only one thing in common: the undisputed material facts demonstrate that none of these plaintiffs has a cognizable claim against Gelman or Pall.  For these reasons, defendants' Motion should be granted and summary judgment entered against plaintiffs on all claims.

Respectfully submitted,


By: /s/ Craig H. Zimmerman
　　　　One of its Attorneys


Counsel for Pall Corporation and
Gelman Sciences, Inc., d/b/a Pall Life Sciences

Steven P. Handler
Craig H. Zimmerman
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606
312-372-2000


Michael L. Caldwell
Karyn A. Thwaites
ZAUSMER, KAUFMAN, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, Michigan 48334-2374
248-851-4111

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Brian M. Wishnow
Kane, Carbonara & Mendoza, Ltd.
One North Franklin Street
Suite 2700
Chicago, Illinois  60606
312.726.2322
312.726.2425 (facsimile)

Neil P. Jansen
Mika, Meyers, Beckett & Jones, PLC
900 Monroe Avenue, NW
Grand Rapids, Michigan 49503-1423
616-632-8000
616-632-8002

_____/s/ Karyn A. Thwaites_____